# IN THE SUPERIOR COURT OF STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

THOMAS F. HEGLUND,⁣ )

    Claimant Below-Appellant, )

           v. )       C.A. NO. N13A-11-003 ALR

AFL NETWORK SERVICES, )

    Employer-Appellee. )

Submitted: April 3, 2014
Decided: July 3, 2014

*On Appeal from Decision of the Industrial Accident Board*
**REVERSED in part and REMANDED**

## MEMORANDUM OPINION

**Gary S. Nitsche, Esquire and Samuel D. Pratcher, II, Esquire, Weik, Nitsche, Dougherty & Galbraith, Attorneys for Claimant Below - Appellee**

**Linda Wilson, Esquire, Marshall, Dennehy, Warner, Coleman & Goggen, Attorneys for Employer Below-Appellee**

**ROCANELLI, J.**

On March 29, 2004, Thomas F. Heglund ("Appellant") suffered a cervical spine injury while working for his employer, AFL Network Services ("Employer"). After the work injury, Appellant had two cervical spine surgeries, on June 17, 2004 and November 16, 2011, to treat his injuries.[1] Appellant was compensated by his employer for a thirty percent permanent impairment of the neck, a ten percent permanent impairment of the upper extremity, and for disfigurement of the neck.

The first surgery after the work-related injury was on June 17, 2004, in which Appellant had a cervical fusion involving the C5 and C6 corpectomy (surgical approach was anterior and posterior), C4-C7 interbody fusion, C4-C7 segmental instrumentation, local autograft and removal of the anterior cervical plate. Appellant also received injections.

Sometime after the 2004 surgery, Appellant developed increasing pain in the neck and posterior headaches that included pain in both shoulders and down the arms. Appellant's doctor, Dr. Rastogi, recommended against additional surgery on multiple occasions. Appellant continued to experience chronic neck and bilateral arm pain.

---

[1] Prior to the work injury at issue here, Appellant had surgery on April 3, 2002. Appellant's 2002 surgery consisted of a C7 anterior cervical discectomy, a C6-7 interbody fusion, a right structural iliac crest bone graft, and anterior cervical plating. Appellant was symptom-free after the 2002 surgery.

Dr. Bose, a board-certified neurosurgeon, began treating Appellant on November 15, 2010 for chronic pain. Dr. Bose concluded additional surgery was necessary to reduce Apellant's need for medication, to realign his spine, and to improve kyphosis. On November 16, 2011, Dr. Bose performed decompression and fusion surgery at C3-4 and at C7-T1.

Appellant was doing well shortly after the 2011 surgery. However, Appellant began to report pain in his right shoulder, pain in his left side, pain worsening in time and functional ability decreasing. Appellant reported that physical therapy was not helping and continued to feel worsening and new pain in the neck and arm areas. Also, it was necessary for Appellant to take a significant amount of pain medication.

Dr. Bose recommended additional surgery to treat Appellant's chronic and worsening pain. Appellant sought compensation for this surgery through his Employer. His Employer opposed payment for the additional surgery.

Appellant filed a Petition for Additional Compensation with the Industrial Accident Board. On September 19, 2013, a hearing was held before a Workers' Compensation Hearing Officer, sitting in place of the Industrial Accident Board pursuant to 19 *Del. C.* § 2301(B) by stipulation. The Decision on Petition to

Review Additional Compensation Due was issued November 6, 2013 ("Board Decision"). This appeal followed.

Dr. Bose testified at the hearing that the surgery proposed involves a posterior exploration, a C2-3 decompression and fusion and revisions of the T2 and C6 screws. Dr. Bose suggested surgically exploring the previous fusion sites to ensure the T2 screws are not loose, as well as extending the decompression and fusion to C2. Dr. Bose's opinion was that there is likely a micromotion or loosening of the C6 screw on the left side and loosening of both of the T2 screws. According to Dr. Bose, these issues are best be explored by disconnecting the rods and toggling on the screws. If a screw is loose, Dr. Bose stated that he must replace it with a bigger screw or get fixation on the level below where the vertebra pedicle is normal. The Board Decision notes Dr. Bose's stated goals for the surgery.

Dr. Bose conceded that surgery would not increase Appellant's function and not enable Appellant to return to work. However, Dr. Bose testified that the surgery is reasonable and necessary to achieve the ultimate goal of decreasing Appellant's pain level and reducing Appellant's use of pain medication. Moreover, Dr. Bose opined that Appellant's other options, a spinal cord stimulator and pain pump are not ideal for Appellant because his body will eventually adapt

to the medications used in these options, thereby necessitating an increase in dosage and decrease in effectiveness over time.

Appellant also testified at the hearing. Appellant stated that after the 2011 surgery, he initially did not have headaches and considered the surgery to be beneficial. However, according to Appellant, a few months after the 2011 surgery, his headaches, pain in his neck, his shoulder and his arms returned and gradually increased. Appellant testified that he is currently experiencing severe continuous pain in the back or the left side of his head, in his neck, and in both shoulders. Appellant also testified to periodic severe pain in his collar bone area. Appellant admitted that he has fibromyalgia. Appellant also testified that his functional ability is significantly limited and that he has a very limited range of motion.

Dr. Scott Rushton, a board-certified orthopedic surgeon, testified on behalf of Employer. Dr. Rushton examined Appellant three times prior to Appellant's 2011 surgery. Dr. Rushton opined that the additional proposed surgery is not reasonable or necessary. Dr. Rushton testified that a surgical approach may be a viable option, but that the surgery will likely fail and increase Appellant's disability. For example, Dr. Rushton opined that Appellant's 2011 surgery failed because Appellant's cervical thoracic kyphosis was not addressed, and would not be addressed properly by Dr. Bose's proposed third surgery. Dr. Rushton opined that Appellant's neck pain and headaches would likely not be improved with

4

surgery and that Appellant should manage his symptoms without surgical intervention.

In connection with Dr. Rushton's review of Dr. Bose's medical notations from December 24, 2012, Dr. Rushton acknowledged that the diagnostic testing results contained therein raised concerns about the T2 screws and the C6 screw. While Dr. Rushton agrees with the diagnostic test results, he states that more than diagnostic test results are required for Appellant to be a candidate for surgery. As the Board Decision notes, however, Dr. Bose relies on more than diagnostic test results to conclude that additional surgery should be performed.

Despite the Board Decision's findings that the additional proposed surgery will, in part, fix screws that may need to be tightened or replaced and agreement between the doctors that loose screws should be surgically addressed, the Board Decision concluded that the proposed additional is not reasonable or necessary. On the other hand, the Board Decision stated in the conclusion, "[Appellant] may require surgery to fix any screws that may be loose, but the surgery as proposed does not appear to be a reasonable or necessary approach to correcting such problems if they exist." Appellant's Petition for Additional Compensation Due was denied.

Appellant appealed the Industrial Accident Board's denial of additional compensation for the additional surgery proposed by Dr. Bose. Appellant argues that the Board's Decision should be reversed and compensation should be awarded because the proposed surgery is reasonable and necessary for the treatment of Appellant's chronic pain symptoms as a result of the work-related accident. Employer argues that the Board's Decision should be affirmed because the Board's findings are supported by substantial evidence on the record.

In reviewing a Board decision, the Court must first determine whether substantial evidence exists to support the Board's findings.[2] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] The Court does not make its own factual findings, weigh the evidence or determine questions of credibility.[4] Next, the burden is on the Appellant to show that the Board acted "contrary to law, fraudulently, arbitrarily or capriciously."[5] The Board will be reversed where "the Board's findings are clearly

---

[2] *Patterson v. Red Clay Consolidated School District*, 2013 WL 4522167, at *3 (Del. Super. June 28, 2013).
[3] *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1160 (Del. 2009).
[4] *Id.*
[5] *Odessa National Golf Course LLC v. New Castle County Office of Finance*, 2014 WL 1101470, at *2 (Del. Super. March 14, 2014).

wrong and its conclusions [are] not the product of an orderly and logical deductive process."[6]

The Board Decision's conclusion that the proposed surgery to repair the T2 screws and C6 screw was not reasonably necessary does not logically follow the factual findings. Specifically, the Board Decision accepted Dr. Bose's opinion that the T2 and C6 screws were loose, contributing to Appellant's pain and requiring surgical tightening and/or replacement of those screws as reasonable and necessary to reduce Appellant's pain. Moreover, the Board Decision recognized that Dr. Rushton's review of the T2 and C6 diagnostic results were consistent with Dr. Bose's opinion. Nevertheless, the Board Decision concludes that, although Appellant requires surgery to fix the screws, the proposed surgery is not a reasonable or necessary approach to correcting such problems if they exist. This conclusion is inconsistent with the findings set forth in the Board Decision.

---

[6] *Id.* (quoting *Tatten Partners, L.P. v. New Castle County Bd. of Assessment Revies*, 642 A.2d 1251, 1256 (Del. Super. 1993).

**NOW, THEREFORE**, the Court **REVERSES** the Board Decision's conclusion that the proposed additional surgery is not reasonable and necessary because this conclusion is inconsistent with the record findings set forth in the Board Decision. This matter is **REMANDED** to the Hearing Officer for consideration of conclusions consistent with the factual findings set forth in the Board Decision.

**IT IS SO ORDERED this 3rd day of July, 2014.**

*Andrea L. Rocanelli*

_____

The Honorable Andrea L. Rocanelli

8